# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> JOHN D. GUNDLACH, <br><br> Defendant. | Cause No. CR 21-22-GF-BMM <br><br><br> **ORDER** |

## BACKGROUND

John D. Gundlach has moved the Court to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A)(i). (Doc. 27.) The Court sentenced Gundlach to a term of 78 months follow by 4 years supervised release on September 30, 2021. (Doc. 23.) Gundlach's projected release date is April 27, 2027. *See* BOP Inmate Finder, https://www.bop.gov/inmateloc/ (last visited Jan. 25, 2023). Gundlach is currently located at Lompoc FCI in Lompoc, California. *Id*. Gundlach has served approximately 18% of his sentence.

### I.   Availability of Relief Under 18 U.S.C. § 3582

The First Step Act amended the United States Code to "promote rehabilitation of prisoners and unwind decades of mass incarceration." *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019). The First Step Act amendments to 21

1

U.S.C. § 841(b)(1)(A) and 18 U.S.C. § 3582(c)(1)(A) prove relevant to Devereaux's motion.

Where, as here, a motion for a sentence reduction is well taken, the Court may modify a term of imprisonment following a finding that "extraordinary and compelling reasons warrant such a reduction." *Id.* The Court must consider the factors set forth in 18 U.S.C. § 3553(a), and whether the reduction proves "consistent with applicable policy statements issued by the Sentencing Commission," when deciding whether to reduce a sentence. *Id.*; § 3582(c)(1)-(2).

Congress has not defined those circumstances that rise to the level of "extraordinary and compelling," except to say that "[r]ehabilitation of the defendant alone" is insufficient. 28 U.S.C. § 994(t); *Brown*, 411 F. Supp. 3d at 448. The law instead directs the Sentencing Commission to issue a policy statement in which it describes "what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." *Id.*

The relevant Sentencing Commission policy statement lies in USSG § 1B1.13, titled Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) ("Policy Statement"). Notably, the Sentencing Commission has not amended the Policy Statement since passage of the First Step Act. *See United States v. Haynes*, 456 F. Supp. 3d 496, 507 (E.D.N.Y. 2020); *Brown*, 411 F. Supp. 3d at 448. A number

of district courts have noted the unlikelihood of the Sentencing Commission updating the Policy Statement in the foreseeable future, as the Sentencing Commission requires four voting Commissioners to adopt a proposed amendment, and currently has only two voting Commissioners. *See, e.g., Haynes*, 456 F. Supp. 3d at 510 n.20; *Brown*, 411 F. Supp. 3d at 449 n.1; *United States v. Cantu*, 423 F. Supp. 3d 345, 347-48 n.1 (S.D. Tex. 2019); *United States v. Maumau*, 2020 WL 806121, at *1 n.3 (D. Utah Feb. 18, 2020); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019); *United States v. Handerhan*, 2019 WL 1437903, at *1 n.4 (M.D. Pa. Apr. 1, 2019).

The "Commentary" to the Policy Statement lists five "Application Notes," the terms of which evidence the Policy Statement's inapplicability to the amended § 3582(c)(1)(A). *See* USSG § 1B1.13 n.1-5. Note 1 lists those circumstances that qualify as "extraordinary and compelling," including the defendant's medical condition, age, family circumstances, and "Other Reasons." *Id.* n.1(A)-(D). The "Other Reasons" subdivision to Note 1 provides as follows: "As determined by the Director of [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." Id. n.1(D) (emphasis added). Notes 4 and 5 likewise "speak plainly to the BOP's exclusive gate-keeping authority pre-[First Step Act]." *Haynes*, 456 F. Supp. 3d at 508. Note 4 provides, for example, that a "reduction

under this policy statement may be granted only upon motion by the Director of the [BOP] pursuant to 18 U.S.C. § 3582(c)(1)(A)." USSG § 1B1.13 n.4.

The pre-First Step Act Policy Statement does not account for amendments to § 3582(c)(1)(A), namely, the removal of BOP's sentinel authority over sentence reduction petitions and the extension to defendants of the right directly to move for a sentence reduction. *See United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019). The Policy Statement instead contemplates only motions filed by the BOP Director. *Id.*; *see also* USSG § 1B1.13.

A split in authority emerged over whether the Policy Statement at USSG § 1B1.13 remained "applicable" to § 3582(c)(1)(A) motions directly filed by defendants after the First Step Act's amendments of § 3582(c)(1)(A) first became effective. *See Beck*, 425 F. Supp. 3d at 579. Some courts reiterated § 3582(c)(1)(A)(i)'s requirement that a sentencing reduction must be "consistent" with any "applicable" policy statements. *See id.* Another court determined that, "given the changes to [§ 3582(c)(1)(A)], the policy-statement provision that was previously applicable . . . no longer fits . . . and thus does not comply with the congressional mandate that the policy statement must provide guidance on the appropriate use of sentence-modification provisions under § 3582." *United States v. Cantu*, 423 F. Supp. 3d 345, 351 (S.D. Tex. 2019). Additionally, "[a]t least twelve" other federal district courts have held the Policy Statement's "extraordinary and compelling

reasons" list to be unexhaustive for defendants' direct sentence reduction motions. *United States v. Haynes*, 456 F. Supp. 3d 496, 511-13 (E.D.N.Y. 2020)

The Ninth Circuit subsequently issued its decision in *United States v. Aruda*, 993 F.3d 797 (9th Cir. 2021). The *Aruda* decision makes clear that the Policy Statement at USSG § 1B1.13 "is not an 'applicable policy statement' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." *Aruda*, 993 F.3d at 801. Where a court considers a sentence reduction motion directly filed by a defendant under the First Step Act, the substantive standards for what may qualify as extraordinary and compelling expand beyond the bounds of guidance provided in USSG § 1B1.13's Policy Statement Application Notes. *United States v. Aruda*, 2021 WL 1307884, at *4 (9th Cir. Apr. 8, 2021); *see also Haynes*, 456 F. Supp. 3d at 511–13; *Cantu*, 423 F. Supp. 3d at 350-52; *Beck*, 425 F. Supp. 3d at 578–80 (M.D.N.C. 2019); *United States v. Brown*, 411 F. Supp. 3d 446, 451 (S.D. Iowa 2019).

Although the Policy Statement may provide helpful guidance, "it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)." *See United States v. Booker*, 543 U.S. 220, 245 (2005); *Beck*, 425 F. Supp. 3d at 579; *see also United States v. McCoy*, 981 F.3d 271, 282 n.7 (4th Cir. 2020). The Court will look to additional considerations outside those listed in the Policy Statement to determine whether extraordinary and compelling circumstances compel a reduction

in Gundlach's sentence.

This Court possesses broad discretion to consider all relevant information within the context of a resentencing hearing. Recently, the United States Supreme Court addressed this particular issue. In *Concepcion v. United States,* No. 20- 1650, (June 27, 2022), the Supreme Court held that federal courts historically have exercised broad discretion to consider all relevant information at an initial sentencing hearing, consistent with their responsibility to sentence the whole person before them. *Id*. 6–11. That discretion also carries forward to later proceedings that may modify an original sentence. *Id*.

## II. Whether Gundlach has Demonstrated Extraordinary and Compelling Reasons

Gundlach must demonstrate that extraordinary and compelling reasons support a reduction of his sentence notwithstanding this Court's determination that it has discretion to provide relief. *United States v. Maumau*, 2020 WL 806121, at *5 (D. Utah Feb. 18, 2020). The Court may reduce Gundlach's sentence if "extraordinary and compelling reasons warrant such a reduction" and if the reduction "is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A) & (i); *see also* 28 U.S.C. § 994(a)(2)(C), (t); U.S.S.G. § 1B1.13(1)(A). The Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant, but they are not binding. *United States v. Aruda*, 993

F.3d 797, 802 (9th Cir. 2021).

Gundlach requests that the Court release him on the basis that: (1) Gundlach faces a higher risk of death or complications from contracting COVID-19 given his hepatitis C diagnosis; (2) his family is struggling financially without him; and (3) Gundlach's 16-year-old step-daughter is pregnant and does not have sufficient family support to raise the child. (Doc. 27-1 at 2.) The Court determines that extraordinary and compelling reasons do not exist to warrant Gundlach's immediate release.

### A. Hepatitis C & COVID-19

Gundlach's medical conditions do not qualify as an "extraordinary or compelling" reason. The pertinent guideline policy statement treats an "extraordinary and compelling" circumstance as "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he [] is not expected to recover." U.S.S.G. § 1B1.13 app. note 1(A)(ii). Gundlach presents the risk factor of having Hepatitis C. (Doc. 27-1 at 2.) An unvaccinated inmate who presents a medical risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19, and who is not expected to recover from that condition, presents an extraordinary and compelling circumstance under that provision. (Doc. 30 at 12.) Gundlach is currently located at Lompoc FCI in Lompoc,

California. *See* BOP Inmate Finder, https://www.bop.gov/inmateloc/ (last visited Jan. 25, 2023). Gundlach received the Pfizer COVID-19 vaccine on January 4, 2022, and June 22, 2022. (*Id*. at 13.) Additionally, the BOP website indicates that there are currently zero inmates and zero staff members at Lompoc FCI who have tested positive for COVID-19. *See* https://www.bop.gov/coronavirus/-index.jsp (last visited Jan. 25, 2023).

Courts have determined that the risk of complications for individuals reduce dramatically reduced once they are vaccinated. The risk of severe harm from COVID-19, therefore, does not qualify automatically as an "extraordinary and compelling" reason under § 3582(c)(1)(A)(i). *See, e.g.*, *United States v. Cortez*, 2021 WL 689923 (D. Ariz. Feb. 23, 2021); *United States v. Smith*, 2021 WL 1890770, at *3-6 (E.D. Cal. May 11, 2021) (concluding that there is a "rebuttable presumption" that "if a defendant has received at least the first dose of an authorized vaccine and, if necessary, has scheduled a second dose as specified by the manufacturer and authorized by the [FDA], then the risk of severe harm from COVID-19 is not an 'extraordinary and compelling' reason under § 3582(c)(1)(A)(i) unless the defendant offers evidence of an elevated personal risk despite vaccination."); *United States v. Jackson*, 2021 WL 1927506, at *3 (N.D. Cal. May 13, 2021); *United States v. Grummer*, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) (denying

compassionate release to defendant with several chronic medical conditions when defendant had been fully vaccinated against COVID-19).

Gundlach, notwithstanding the risk factors he presents, fails to present a sufficient extraordinary and compelling reason allowing immediate compassionate release. The Court recognizes, from its own personal experience, that the COVID-19 vaccines do not provide foolproof protection from further infection. Gundlach remains at a higher risk of harm or death were he to contract COVID-19 despite his vaccinated status. In fact, Dr. Anthony Fauci, the former Chief Medical Advisor to the President of the United States, anticipated that a COVID-19 vaccine will turn into an annual event similar to a seasonal flu shot. *See* CNN, *Covid Vaccines Will Likely Become Annual Like Flu Shots, White House Officials Say* (Sept. 6, 2022).

### B. Family Circumstances

The guideline contemplates that a defendant's family circumstances may constitute an "extraordinary and compelling reason," including the death or incapacitation of the caregiver of the defendant's minor children or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner. *See* U.S.S.G. § 1B1.13 n.1 (C)(i)–(ii). Section 3142(g) also requires the Court to consider, among other things, "the nature and circumstances of the offense" of conviction and "the history and characteristics of the person, including . . . the

person's character [and] physical . . . condition." 18 U.S.C. §§ 3142(g)(1), (3)(A). Gundlach cites to his wife's and dependents' financial stress due to inflation in the national economy. Gundlach also raises that his 16-year-old step-daughter is pregnant and the father of the child cannot support the mother or the child. (Doc. 27-1 at 2.) Gundlach has not provided supporting documentation for these assertions. Yet, taking them at face-value, it is not enough to justify his early release from custody. Gundlach must demonstrate that he has a child under the age of 18 whose family member caregiver has either died, "suffered a severe injury (e.g., auto accident)," or who "suffers from a severe illness (e.g., cancer) that renders the caregiver incapable of caring for the child" to qualify under the Death or Incapacitation of Caregiver category. *See* U.S.S.G. § 1B1.13(C). Gundlach fails to demonstrate that the 16-year-old step-daughter and her newborn do not have a family member to provide sufficient care due to death, injury, or illness.

### C. Section 3553(a) Factors

A court's decision to grant a defendant's motion for compassionate release must also consider the factors under 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A). As such, any consideration of release now should be balanced against the same § 3553(a) factors, such as deterrence, just punishment, respect for the law, and avoidance of disparity of sentencings. Those factors do not support Gundlach's request for premature, permanent release. Law enforcement arrested

Gundlach less than two years ago for possessing and dealing a significant amount of methamphetamine. Gundlach possesses a significant criminal history and was on conditional release for a state sentence when he committed this federal offense. With Gundlach's safety valve eligibility, he faced an advisory guideline range of 120 to 150 months of imprisonment. The Court varied downward significantly and sentenced Gundlach to a term of 78 months of imprisonment. (Doc. 24 at 2.) This is a sentence almost four years lower than the low-end of Gundlach's advisory guideline range. The Court's consideration of the 18 U.S.C. § 3553(a) factors concludes that Gundlach fails to meet the high burden for compassionate release.

### D. Conclusion

Considering all the relevant circumstances, Gundlach has failed to make a sufficient showing of an extraordinary and compelling circumstance to warrant an immediate release from custody. The Court acknowledges, however, that Gundlach's compromised status due to his Hepatitis C diagnosis warrants a small sentence reduction. The Court will reduce Gundlach's sentence to a period of 60 months followed by four years of supervised release.

Accordingly, **IT IS ORDERED** Gundlach's Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) (Doc. 27) is **DENIED** in part and **GRANTED** in part.

DATED this 1st day of March, 2023.

_____
Brian Morris, Chief District Judge
United States District Court